IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 23-CR-337 (CRC) |
| | : | |
| v. | : | 40 U.S.C. § 5104(e)(2)(D) |
| | : | |
| **CODY LEE TIPPETT,** | : | 40 U.S.C. § 5104(e)(2)(G) |
| | : | |
| Defendant. | : | |
| | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Cody Lee Tippett, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. TIPPETT, along with friend Dustin Martin, drove from Columbus, Ohio to Washington, D.C. to attend Former President Trump's January 6, 2021 "Stop the Steal" rally.

9. On January 6, 2021, TIPPETT and Martin attended the rally and heard Former President Trump say, "we are going to walk down to the Capitol." TIPPETT and Martin walked from the Ellipse on the National Mall to the U.S. Capitol.

10. TIPPETT and Martin arrived on U.S. Capitol Grounds near the Lower West Terrace, where a line of police officers was attempting to keep the incoming crowd away from the Capitol Building using bike rack barricades. TIPPETT observed the police fire bean bags and tear gas into the crowd. TIPPETT also observed members of the crowd pushing against the police and chanting phrases such as "hold the line" and "stop the steal." TIPPETT separated from Martin for a period when Martin approached the police line.

11. At approximately 1:50 pm, a group of rioters on the Lower West Terrace pushed a line of police officers up a set of stairs that leads to the Upper West Terrace of the Capitol Building. Other rioters, including TIPPETT and Martin, followed that initial group up onto the stairs. However, another police line prevented the crowd from advancing further up the stairs. At approximately 2:10 pm, the rioters again pushed past that police lines on the steps and gained access to the Capitol Building for the first time that day, breaking windows near the Senate Wing Door and breaching the door at approximately 2:13 p.m. TIPPETT and Martin followed.

12. TIPPETT and Martin approached the Senate Wing Door of the Capitol Building at approximately 2:15 pm, where they heard a man say, "they started shooting at us…rubber bullets. It fucking hurts." TIPPETT observed some individuals climb into the Capitol through a smashed window next to the door. TIPPETT and Martin then entered the Capitol Building through the Senate Wing Door four minutes later, at approximately 2:19 pm. TIPPETT did so with the intent to disrupt Congress.

13. TIPPETT and Martin walked into the Crypt, where a large crowd of rioters chanted and pushed against a line of police officers. As the crowd pushed the officers back, TIPPETT and Martin advanced further into the Crypt, and then entered an area referred to as the Upper Level Entrance to the Capitol Visitor's Center (CVC).

14. At approximately 2:30 pm, USCP officers in this area attempted to lower two large security doors, and retreated into the CVC as rioters threw objects at them. As TIPPETT and Martin entered the area, rioters around them prevented the security doors from closing by placing furniture underneath them. TIPPETT and Martin passed through the opening the rioters had created had continued down a flight of stairs and into the CVC.

15. TIPPETT and Martin remained in the CVC for about 15 minutes, after which they reentered the Crypt. TIPPETT then exited the Capitol Building through a window near the Senate Wing Door at approximately 2:53 pm. Martin exited shortly thereafter.

16. After exiting the Capitol Building, TIPPETT and Martin remained with other rioters on the Upper West Terrace – the area directly outside of the Capitol Building – for nearly an hour before leaving Capitol Grounds. TIPPETT again separated from Martin when Martin approached a line of officers on the Upper West Terrace. Soon thereafter, Martin was hit in the face with pepper spray, found TIPPETT, and TIPPETT left the Upper West Terrace with Martin.

### *Elements of the Offense*

17. The parties agree that 40 U.S.C. § 5104(e)(2)(D) requires the following elements:
   a. The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds;
   b. The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and
   c. The defendant acted willfully and knowingly.

18. The parties agree that 40 U.S.C. § 5104(e)(2)(G) requires the following elements:
   a. The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings; and
   b. The defendant acted willfully and knowingly.

### *Defendant's Acknowledgments*

19. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, TIPPETT admits that he willfully and knowingly engaged in disorderly or disruptive conduct by entering the Capitol Building with a large mob despite witnessing clear

indications that he was not permitted to be there, and that he did so with the intent to disturb the session of Congress taking place that day. He further admits that, in engaging in this conduct, he paraded, demonstrated, or picketed.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:   */s/ Alexander Diamond*
                ALEXANDER M. DIAMOND
                NY Bar No. 5684634
                Assistant United States Attorney
                District of Columbia
                601 D St. NW
                Washington, DC 20530
                (202) 506-0427
                Alexander.Diamond@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Cody Lee Tippett, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 12-12-23

Cody Lee Tippett
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 12-12-23

Rasheeda Khan
Attorney for Defendant